**In the Matter of Leon Lawrence SIDELL, Debtor.**

**No. BK–76–855 M.**

United States District Court,
W. D. New York.

Feb. 6, 1978.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (William H. Gardner, Buffalo, N. Y., of counsel), for Debtor.

Gross, Shuman, Laub & David, Buffalo, N. Y. (Robert J. Feldman, Buffalo, N. Y., of counsel), for Manufacturers Hanover Trust Company/Western, N.A.

CURTIN, Chief Judge.

This appeal has been taken from a decision of the Honorable Beryl E. McGuire, Bankruptcy Judge, denying the debtor's motion to reopen the voting on the real property plan which he had submitted to

creditors. The appeal presents several questions for decision arising out of a sizable real property arrangement involving a substantial number of creditors and comes to this court in a complex procedural posture.

The debtor filed a Chapter XII petition in the Bankruptcy Court on March 12, 1976. His real property plan was filed on July 11, 1977. Shortly thereafter, a copy of the plan accompanied by a notice fixing the time for the filing of acceptances or rejections was sent to all creditors. A meeting of creditors was held on August 13, 1977, at which time National Fuel Gas [NFG] filed a written acceptance of the plan.[1] Manufacturers Hanover Trust Company/Western, N.A. (Manufacturers Hanover) filed objections to the affirmative NFG vote since it did not indicate the title of the signing officer. On September 22, 1977, the Bankruptcy Judge issued an order which reopened the voting period and rescheduled the meeting of creditors for October 7, 1977 to resolve all objections.

Prior to the October 7 meeting, NFG filed a withdrawal of its initial acceptance of the plan. Several other vote changes were submitted at the meeting itself. During the meeting, Manufacturers Hanover withdrew its initial objection to the NFG vote since that vote had been changed. Counsel for the debtor remained silent when the vote change was noted and the objections withdrawn. Judge McGuire closed the voting at the end of the meeting, but left the determination of the voting outcome to a later proceeding.

Following the meeting, counsel for the debtor undertook a tally of the vote on behalf of the court. Counting the changed NFG votes as rejections left the debtor short of the statutorily required two-thirds creditor acceptance by .04808%. In other terms, this is a shortfall of $300 in votes despite $430,000 of acceptance votes.

On November 2, 1977, before the outcome had been certified by the Bankruptcy Judge, the debtor filed an order to show cause why the voting should not be reopened. In motion papers dated November 12, 1977 he modified his motion to request that the rejection votes from the October 7 meeting be changed to acceptances since cause had not been shown for the changes under Bankruptcy Rule 12–37(a).[2] A hearing was held on November 16, 1977 and the order currently the subject of appeal was issued on December 1, 1977. In it the Bankruptcy Judge held that Rule 12–37(a) was only a technical requirement, that he found reason for approval of the changed votes, and that the debtor's counsel, by his silence at the October 7 meeting, had waived any objection to the changed votes.

A notice of appeal was filed by the debtor on December 8, 1977 and the appeal was heard by this court on January 11, 1978.

## I.

The main issue on appeal is debtor's contention that the vote change by NFG was in violation of Bankruptcy Rule 12–37(a) which requires court approval only "for good cause shown" before a creditor may change or withdraw his acceptance or rejection vote. The decision below clearly states that no such showing and request for court approval were made by NFG. Bankruptcy Court Order at 4.

The Bankruptcy Judge held that this requirement was merely technical, finding that it would be preferable to judge each case on its particular facts rather than

---

1. The claims held by NFG included one for $10,517.55 and another for $3,006.45.

2. Bankruptcy Rule 12–37(a) states:
   *Persons Entitled to Accept or Reject Plan; Time for Acceptance or Rejection.* The court shall fix a time for the acceptance or rejection of a plan or plans and notice thereof shall accompany any plan transmitted to creditors pursuant to Rule 12–36. If his claim is deemed allowed pursuant to Rule 12–30(e) or has been allowed by the court, a creditor may accept or reject a plan or plans within the time fixed. Acceptances may be obtained before or after the filing of the petition and may be filed with the court on behalf of the accepting creditor. For cause shown and within such time, the court may permit a creditor to change or withdraw his acceptance or rejection.

adopt a "hard and fast" rule. He then added that since the plan itself is complex and voluminous and offers unsecured creditors little prospect of payment on their claims, any court "would be hard put to deny a creditor the privilege of changing its mind within the voting period." The Bankruptcy Judge cited *Continental Insurance Co. v. Louisiana Oil Refining Corp.,* 89 F.2d 333, 337 (5th Cir. 1937), and *In re Frank Fehr Brewing Co.,* 268 F.2d 170 (6th Cir. 1959), to support the proposition that changes in a creditor's vote are to be permitted.

After careful consideration, I must disagree with the characterization of Rule 12–37(a) as a mere technical requirement which may easily be dispensed with in this case and must reverse the order below.

Rule 12–37(a) was adopted on April 28, 1975 and became effective on August 1, 1975. No previous judicial interpretation of the provision for a showing of good cause has been found. Language identical to that of the rule in question, however, is found for Chapter X proceedings in Bankruptcy Rule 10–305(a). This has been interpreted to prohibit withdrawal of an acceptance as a matter of right and to allow such action only upon judicial approval after a showing of substantial reason. 13 Collier on Bankruptcy ¶ 10–305.03 at 10–305–8 (14th ed.) [and cases cited therein].

The cases relied on by the court below also arise under Chapter X, but they provide no support for its conclusion that the vote may be changed without a showing to the court of good cause. In *Continental Insurance* the Fifth Circuit Court clearly states that

> withdrawals of consent ought not thereafter to be allowed as of right and without good reason. To do so would embarrass orderly procedure and make room for trafficking in votes.

Meanwhile, the *In re Frank Fehr Brewing Co.* decision appears to me to have no relevance to the issues before the court. There the appellate court merely refused to hear objections to a confirmation vote which were raised for the first time at the appeal level. Even if the characterization by the Bankruptcy Judge of that decision as "less than an endorsement of the trustee's presumptuous handling of the vote" is accurate, it does not offer any clear guidance for interpretation of the Rule's effect.

█ Furthermore, to apply the Rule on a "case by case" basis results in frustration of its purpose. The court should give full effect to the language of this Rule which was adopted by the Supreme Court since it must assume that the provisions set forth were intended to serve a useful purpose. In this case, to do otherwise without weighty reason opens the door to potential abuse. There is no hint of any trafficking of votes in this case but, if the Bankruptcy Judge does not require the creditor to make an explanation for his change, he cannot ascertain whether improper practices are used to influence the change.

Here the Bankruptcy Judge substituted his opinion of the plan as a reason for permitting the vote change rather than making the creditor explain. He characterizes the plan as one offering "virtually no prospect of receiving payment on their claims." Such a ruling on the plan merits is expressly delegated to a separate confirmation ruling *after* the creditor voting has been completed and a confirmation hearing has been held. Bankruptcy Rule 12–38(d). To make such a determination at this point without any opportunity for the debtor to be heard clearly violates both the letter and the spirit of the Bankruptcy Rules.

Therefore, I must reject the flexible case-by-case method proposed by the Judge for enforcement of Rule 12–37(a).

## II.

Having ruled on the interpretation of Rule 12–37(a), I will deal only briefly with the two grounds of waiver and estoppel which Manufacturers Hanover asserts should bar the debtor from bringing this appeal.[3]

---

3. The law to be applied on the questions of waiver and estoppel should be that of New York State under the doctrine enunciated in *Erie Railway Co. v. Tompkins,* 304 U.S. 64, 58

## WAIVER

Manufacturers Hanover claims that since the debtor's counsel failed to object to the change of NFG's vote at the October 7 creditor meeting, he waived debtor's right to any further challenge.[4] The Bankruptcy Judge found that since the Manufacturers Hanover objections were withdrawn after the vote change, debtor was clearly on notice of the change and should have raised his own objection.

It is highly questionable whether debtor had the legal authority to waive the requirement that the creditor show cause for a vote change as specifically set out in the Rule. However, even if we assume that the debtor could waive it, the record does not reveal any act or statement by debtor's counsel which indicates debtor's intent to waive at the October 7 meeting and the court cannot infer waiver from silence alone. *O'Connor v. Collins,* 239 N.Y. 457, 461–62, 147 N.E. 65 (1925). Furthermore, as pointed out earlier, debtor's counsel brought his motion to reopen before the vote result had been given final approval by the Bankruptcy Judge. Therefore, I find that the moving party has failed to establish waiver as a matter of law.

## ESTOPPEL

Manufacturers Hanover also claims that the debtor is equitably estopped[5] from asserting its motion since it failed to object to the vote change at the October 7 meeting. This issue was not dealt with in the order of the Bankruptcy Judge under appeal.

Estoppel is distinguished from waiver in that the latter is predicated upon intent whereas estoppel is based primarily on the particular position of the person asserting estoppel, often regardless of the first party's intent. Here silence may lead to estoppel if there is a failure to speak despite a duty to do so which leads to injury to the other party.

While it is generally conceded that debtor's counsel remained silent after the change of NFG's vote, I find that no injury results from any reliance by Manufacturers Hanover upon that silence. In remanding this case back to the Bankruptcy Court, it would only be proper for that court to reinstate Manufacturers Hanover's objection to the original NFG vote and hear them on the merits. Furthermore, Manufacturers Hanover may still contest the quality and effectiveness of the debtor's plan in the confirmation hearing regardless of creditor voter approval. Bankruptcy Act §§ 468, 472, 11 U.S.C. §§ 868, 872. Therefore, without reaching the other required elements, I find that the debtor is not estopped from asserting the motion currently on appeal.

## CONCLUSION

The order of the Bankruptcy Judge is reversed and the vote change by NFG is rescinded. The case is remanded to the Bankruptcy Court solely to allow NFG to show cause why it should be permitted to change its vote and to hear objections to that change by interested parties. After a ruling on the vote change, the voting is to be closed and a final vote tally rendered under Bankruptcy Act § 468, 11 U.S.C. § 868.

So ordered.

---

S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

4. The doctrine of waiver has been well established by case law. It involves a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege which, except for such waiver, the party would have enjoyed. *See* 21 N.Y. Jurisprudence § 88 at 126 n.1 (1961) [and cases cited therein].

5. Equitable estoppel is the principle by which a party is precluded from asserting a position contrary to that which, by his words or conduct, has induced another to change his position in reliance and would cause injury to the latter *if the contrary position were allowed. See generally,* 21 N.Y. Jurisprudence § 15 at 20–21.